Robert Tauler (SBN 241964)
Dan Ernst (SBN 296262)
Tauler Smith LLP
626 Wilshire Boulevard, Suite 510
Los Angeles, California 90017
Tel: (310) 590-3927
rtauler@taulersmith.com

Attorneys for Plaintiff
NUTRITION DISTRIBUTION LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTRITION DISTRIBUTION LLC, an Arizona Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>MICKEY RUBIO, an individual, d.b.a. THAI LABZ, a Texas company, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. '17CV0839 JLS AGS<br><br>**COMPLAINT FOR FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT § 42 (a)(1)(B))**<br><br>**[DEMAND FOR A JURY TRIAL]** |

Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("Plaintiff"), by and through its undersigned attorneys, submits this Complaint against defendants Mickey Rubio, an individual d.b.a. Thai Labz, a Texas company, entity form unknown ("Thai Labz")(collectively together with Thai Labz, "Defendant"), and in support thereof, avers as follows:

## INTRODUCTION

1.  This is a civil action arising out of Thai Labz's false and misleading advertising with respect to several products on its website, www.thailabz.com, and various other on-line retail marketplaces (collectively, the "Websites"). For example and without limitation, Thai Labz is unlawfully advertising, marketing, distributing and offering for sale a range of products (the "SARMs Products") containing Selective Androgen Receptor Modulators ("SARMs") such as, without limitation, Cardarine (also known as "GW-501516"), RAD-140, Ibutamoren (also known as "MK-677"), Ostarine (also known as "MK-2866"), Andarine (also known as "S-4") and Ligandrol (also known as "LGD-4033"). SARMs, like those contained in the SARMs Products, are synthetic chemicals intended to have effects in humans similar to those of illegal anabolic steroids.

2.  On the Websites and through other promotional materials, Defendant specifically markets its various SARMs Products as "dietary supplements" to body builders, gym users, fitness enthusiasts and athletes, promising these consumers numerous purported benefits without any of the negative side effects of anabolic steroids.

3.  However, SARMs Products are not safe for human consumption. Indeed, medical experts have concluded that the sale of products containing SARMs, such as the Defendant's SARMs Products, are "***highly dangerous to public safety***." (Emphasis added.)

4.  Defendant knew, or should have known, that its SARMs Products are not recognized as safe and effective for any of the uses suggested by it and therefore Defendant has knowingly and materially participated in a false and misleading

advertising campaign to promote and sell its products containing SARMs. Defendant's continuing false, misleading and deceptive practices have violated the Lanham Act and have unjustly enriched Defendant at the expense of Plaintiff, and have caused Plaintiff extensive and irreparable harm, including but not limited to, loss of revenue, disparagement and loss of goodwill.

5. Among other things, this action seeks to enjoin Defendant from the marketing and sale of any and all products containing SARMs, as Defendant is falsely marketing such products in violation of the Lanham Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. 1332 (diversity jurisdiction) because Plaintiff asserts causes of action arising under federal law and the parties are citizens of different states and the controversy exceeds the value of $75,000.

7. This Court has personal jurisdiction over Defendant because Defendant has, directly or through its intermediaries (including distributors, retailers, and others), developed, licensed, manufactured, shipped, distributed, offered for sale, sold and advertised its nutritional supplement products in the United States, the State of California and this district, including but not limited to, the SARMs Products and/or other products containing SARMs. Defendant has purposefully and voluntarily placed these products into the stream of commerce with the expectation that they will be purchased in this district.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim occurred in this district. *Allstar Marketing Group, LLC v. Your Store Online*, LLC, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009). Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## PARTIES

9. Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("Plaintiff") is an Arizona limited liability company with its principal place of business at 14215 N. 8th Pl., Phoenix, Arizona, 85022.

10. Defendant Thai Labz is, on information and belief, a Texas business whose address is 4511 North Midkiff Road, Midland, Texas 79705.

11. Defendant Mickey Rubio is, on information and belief, the owner and operator of Thai Labz whose address is 2724 South County Road 1192, Midland, Texas 79706-3815.

12. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-10, inclusive, and therefore sued these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

## FACTUAL ALLEGATIONS

13. The nutritional supplement industry is one of the fastest growing and most lucrative in the United States. A recent Forbes article estimates that nutritional supplement sales accounted for $32 billion in revenue in 2012 and predicts this number to grow to $60 billion within ten years. The growth and size of the nutritional supplement market and the relatively low barriers to entry provide perverse incentives for unfair competition prohibited by the Lanham Act and other illegal activity.

### Plaintiff Nutrition Distribution and "Mass FX Black"

14. Plaintiff is a cutting edge sports supplement manufacturer and marketer. From its inception, Plaintiff was a leader in the nutritional supplement market, specifically for bodybuilding.

15. Plaintiff has products in several categories of body building products, including pre-workouts, muscle-gainers, fat burners and male performance enhancement.

16. Around 2007, Plaintiff began developing a new product in the muscle-gainer sub-market of the nutritional supplement world.

17. After devoting its resources for over a year on product development and testing, Plaintiff introduced "Mass FX Black."

### SARMs and Their Dangers

18. Unlike Mass FX Black, SARMs have been shown by published, peer-reviewed clinical studies to be unsafe for human consumption.  Indeed, medical experts have opined that products containing SARMs "have *many recognized potential serious side effects*, including hepatoxicity (liver damage), and markedly lower plasma HDL cholesterol (raising the risk of heart disease)," and may have even more serious consequences that are currently unknown.  In fact, clinical trials regarding Cardarine were abandoned by GlaxoSmithKline in 2007 because animal testing showed that the drug *caused cancer to develop rapidly in several organs*.  Also, while currently the subject of phase II clinical trials, medical experts have emphasized that there is "*no evidence that Ostarine is safe for humans to consume*."  Thus generally, medical experts have concluded that the sale of products containing SARMs, such as the Defendant's SARMs Products, are "*highly dangerous to public safety*."  (Emphasis added throughout this paragraph.)

19. In addition, SARMs are specifically prohibited for use in sporting events by the World Anti-Doping Agency and the U.S. Anti-Doping Agency.

### Defendant Thai Labz and Its SARMs Products

20. Defendant is a nutritional supplement company based, on information and belief, in Texas who directly competes with Plaintiff in the fitness supplement marketplace.

21. On the Websites and through other promotional materials, Thai Labz touts the numerous purported health and physical benefits of its various SARMs Products. For example and without limitation, Defendant represents to consumers that its "The Shredder" product containing Rad-140, Cardarine and S-4 "is a combination [of] mutliple [sic] fat annihilating compounds merged with muscle promotion so you dont [sic] end up losing both muscle and fat … [b]ut instead actually get stronger and gain lean muscle while burning off the unwanted fat." In addition, Defendant represents that its "Sarmageddon" product containing Rad-140, Ligandrol and Ostarine will "trigger immediate muscle gains that rival some of the classic products safely without side effects." Generally, Defendant specifically markets its various SARMs Products as "dietary supplements" to body builders, gym users, fitness enthusiasts and athletes, promising these consumers numerous purported benefits without ever mentioning the potentially severe side effects of these products.

22. However, in light of the general consensus of the scientific community, it is clear that consumption of products containing SARMs, such as the SARMs Products, entails a high risk for dangerous side effects. Given the ready availability of relevant peer-reviewed clinical studies, it seems unlikely that Defendant did not know all along that its SARMs Products pose such risks.

23. Defendant's false advertising is harmful to the marketplace for dietary and nutritional supplements, as well as to the health of individual consumers. Defendant has created an illegitimate marketplace of young bodybuilders who will gain muscle at all costs, but who are not informed of the dangers of Defendant's SARMs Products. Users of such products have little incentive to use a natural product like Mass FX Black until they are hurt or the SARMs Products are taken off the shelves.

## CLAIM FOR RELIEF

**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

24. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

25. Defendant has purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its SARMs Products, by, without limitation, commercially marketing to bodybuilders and competitive athletes and mislabeling such products without mentioning, and in some cases expressly denying, that (i) such products are banned by World Anti-Doping Agency and the U.S. Anti-Doping Agency, and (ii) there is overwhelming clinical evidence that such products pose extreme health risks.

26. The use of such falsely marketed substances has the tendency to deceive a substantial segment of the public and consumers, including those in this district, into believing that they are purchasing a product with different characteristics.

27. This deception is material because (i) it is likely to influence a consumer's purchasing decision, especially if such consumer is concerned about the health consequences of taking anabolic steroids or other chemicals known to pose serious health risks, and (ii) such decision could lead to dangerous and unanticipated health consequences for such consumers.

28. Defendant has introduced its false and misleading statements into interstate commerce via marketing and advertising on various websites and shipment of its products into interstate commerce.

29. Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Thai Labz and the loss of goodwill in Plaintiff's products.  Indeed, Thai Labz's conduct is a black eye on the industry as a whole and has the tendency to disparage Plaintiff's products and goodwill.

30. Defendant's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce that, in commercial advertising

and promotion, misrepresent the nature, characteristics and qualities of Defendant's products in violation of Section 43(a)(1)(B) of the Lanham Act.

## **PRAYER**

Wherefore, Plaintiff Nutrition Distribution LLC prays for judgment against Defendant as follows:

1. For preliminary and permanent injunctive relief enjoining Defendant from producing, licensing, marketing and selling any product containing any SARMs, including, without limitation, the SARMs Products;
2. For an award of compensatory damages to be proven at trial in accordance with 15 U.S.C. § 1117;
3. For an award of any and all of Defendant's profits arising from the foregoing acts in accordance with 15 U.S.C. § 1117 and other applicable laws;
4. For restitution of Defendant's ill-gotten gains;
5. For treble damages in accordance with 15 U.S.C. § 1117;
6. For punitive damages;
7. For costs and attorneys' fees; and
8. Any other relief the Court may deem appropriate.

DATED: April 25, 2017                TAULER SMITH LLP


By: ___/s/ Robert Tauler_____
Robert Tauler
NUTRITION DISTRIBUTION LLC

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: April 25, 2017         TAULER SMITH LLP


By: ___/s/ *Robert Tauler* _____
    Robert Tauler
    NUTRITION DISTRIBUTION LLC